GEORGE W. WINANT, Respondent, *against* NICHOLAS E.
HINES, Appellant.

(Decided March 7th, 1887.)

The acceptance, by a landlord, of the keys of the demised premises from
a tenant quitting the premises before the expiration of the term of the
lease, and a re-letting, by the landlord, for the unexpired term, do not
constitute a surrender and acceptance, unless there is an agreement,
express or implied, to that effect; and the tenant is liable for the stipu-
lated rent, after deducting therefrom the rent received by the landlord
from the tenant of the unexpired term.

APPEAL from a judgment of the District Court in the
City of New York for the Third Judicial District.

The action was brought by plaintiff to recover for rent
of premises leased to defendant. It appeared on the trial
that defendant removed from the premises before the expi-
ration of the term of the lease, and gave the keys thereof to
plaintiff, who advertised the premises to lease, and, after
some delay, leased the same for the unexpired term at
a decreased rental. Judgment was given in the district
court for plaintiff, for the amount of the rent agreed under
the lease, less the amount received from the tenant for the
unexpired term. From the judgment defendant appealed.

*Clark Brothers*, for appellant.

*G. W. Gibbons*, for respondent.

PER CURIAM. — [Present, LARREMORE, Ch. J., and VAN
HOESEN, J.] — If *Oastler* v. *Henderson*, decided by the
English Court of Appeal (L. R. 2 Q. B. Div. 575, 21
Moak's Eng. 277), be a precedent that we ought to follow,
it is our duty to reduce the judgment, but not reverse it.
In that case, the tenant left the demised premises in the
early autumn of 1868, and sent the keys in December of

that year to the landlord, who at once put up a bill and employed an agent to re-let the premises, though a new tenant was not secured till March, 1872, and it was held that the landlord was entitled to recover from the tenant the rent that accrued between the date of the abandonment of the premises and the date of the re-letting to the new tenant. Lords Justices BRAMWELL and BRETT said that they were prepared to overrule *Phene* v. *Popplewell* (12 C. B. N. S. 334), if that case were to be construed as deciding that the surrender of the lease must, as matter of law, relate back to the date at which the landlord received the keys. Applying the decision in *Oastler* v. *Henderson* to the case before us, it would be our duty to modify the judgment appealed from by reducing it to the amount that would pay the rent for the six weeks that intervened between the quitting of the premises by the defendant and the re-letting of them to a new tenant, and to affirm the judgment as so modified. The costs of the court below, would, of course, be retained by the respondent. But we prefer a different course, and, unless the respondent should consent to the modification of the judgment in the manner that we have indicated, we shall affirm the judgment as it was rendered, and give to the appellant leave to carry the case to the Court of Appeals. We shall grant that leave, because there is no reported case that is authority for the decision that we intend to make.

In England, it appears to be settled by a number of decisions, that " by letting the premises to a new tenant, the landlord does an act so inconsistent with the continuance of the tenant's term, that he is estopped from denying that it is at an end" (observations of COCKBURN, Ch. J., in *Oastler* v. *Henderson*). It is true that Baron PARKE, in *Lyon* v. *Reed* (13 Mees. & W. 284), clearly showed that there was no foundation in reason for holding that the letting to a new tenant worked an estoppel in favor of the outgoing tenant, and that it was a palpable error to say that the re-letting to a new tenant effected a surrender by operation of law. Lord Chancellor SUGDEN, in *Creagh* v. *Blood* (1

Winant *v.* Hines.

Jones & La Touche, 133), expressed the same opinion. There can be no such thing as a surrender by operation of law, except where the law declares that the happening of a certain event of itself puts an end to the lease, even in spite of the wishes and intentions of the parties. There are cases in which the law attaches certain consequences to certain acts, irrespective of the intentions of the parties. Where a tenant accepts a lease, the law will not permit him to dispute his landlord's title. Where a tenant, during the life of his lease, accepts a new lease, the law will not permit him to deny that the first lease had previously been surrendered. Where a bailee receives goods on deposit, the law will not permit him to deny the title of his bailor. In these cases, the law conclusively presumes that the rights of the parties are such as both parties recognized as existing at the time they entered into relations with each other. It will be seen that there is in every one of these cases the basis of an equitable estoppel. " The conclusive presumptions were adopted by common consent, from motives of public policy, for the sake of greater certainty, and the promotion of peace and quiet in the community; and therefore it is, that all corroborating evidence is dispensed with, and all opposing evidence is forbidden ". (1 Greenleaf on Evidence § 15).

Where a tenant has abandoned the premises, and notified his landlord that he has done so, the re-letting does not evict him nor prejudice him in any way. If he leaves the premises without the assent of his landlord, he cannot say that he has been induced to alter his situation for the worse in consequence of his landlord's acts or assurances. It cannot be urged that the tenant abandoned the premises because he expected, or had a right to expect, that the landlord would keep them unoccupied, and, therefore, there is no ground for saying that when the landlord re-lets, the re-letting works an estoppel. There is no basis for an equitable estoppel, because the tenant is not induced by the landlord to change his situation; he changes it of his own motion, to suit himself. When he notifies the landlord that he has quit the premises for good, it is idle to say that he is ex-

cluded from them by the act of the landlord in re-letting them. Although this reasoning is clear, yet the English courts have felt themselves compelled to follow the case of *Thomas* v. *Cook* (2 Barn. & Ald. 119), which held that the re-letting of the premises to a third party absolutely estopped the landlord from claiming rent subsequently accruing from the deserting tenant. The discussions in the English courts show very clearly that the judges were unable to explain exactly in what way an estoppel was worked, but after a lame discussion they have generally contented themselves with the assertion that somehow or other the re-letting effected a surrender by operation of law. Indeed, the Queen's Bench has gone to a point to which no American court can follow, for in *Nickells* v. *Atherstone* (10 Q. B. 944), it was decided that the re-letting worked a surrender of the lease by operation of law, notwithstanding that the tenant, after quitting the premises, sent the landlord a letter requesting him to re-let them. Wharton, in his treatise on the Law of Evidence (§ 860), says that these English decisions make a very important extension of the construction of the words " operation of law."

Our American courts have held that where the landlord re-let with the consent of the outgoing tenant, the re-letting would not be regarded as working a surrender by operation of law. They have also held that where the landlord notified the outgoing tenant that he would not release him, but would re-let the premises at his risk and on his account, the re-letting did not effect a surrender by operation of law. These decisions reject *in toto* the idea that the re-letting terminates the lease by judgment of the law, without regard to the intentions of the parties, and make the question of surrender a question of fact, and not a question of law. They make the surrender a question of intent. The inquiry is, did the tenant intend to surrender the lease, and did the landlord intend to accept a surrender? The re-letting of the premises by the landlord raises a presumption that he intended to terminate the lease, and to discharge the tenant from further liability, but that presumption, like any other

presumption of fact, may be overthrown by evidence. Hence if it be made to appear that there was no agreement, express or implied, for the release of the outgoing tenant, it is the law of the state of New York that the re-letting does not put an end to that tenant's liability upon his lease.

But there is a reason for our going still farther than any court has yet gone, and for our holding that in New York, if the tenant is unable to show that by agreement with the landlord the lease was terminated, a surrender will not be presumed from the fact that the landlord has re-let the demised premises. Though in other jurisdictions the doctrine is not unknown, yet it is in New York that the greatest effect is given to the rule that a party injured by another's breach of contract must make reasonable efforts to render the injury as light as possible. We think that that rule is applicable to a breach of the contract of hiring and letting. It has been said that a landlord cannot have two different tenants of the same premises, at one time. As well might it be said that a servant wrongfully discharged could not have two different masters at one time : and yet no one has ever suggested that the servant could not recover damages against the master who wrongfully discharged him, though, before the term of the original employment had expired, he sought and obtained a situation under a new master. We think that, upon the ground that in New York it is the duty of the landlord to render his loss from the tenant's breach of contract as light as possible, the landlord may re-let the premises that his tenant has wrongfully abandoned, and credit upon the rent that the tenant has stipulated to pay whatever he receives from the new tenant. All difficulty on the subject is removed if the demand of the landlord is regarded as a claim for damages for breach of the contract of hiring. Of course, we do not mean that the parties may not by consent cancel the lease. Where the lease is terminated by agreement, the tenant is no longer liable.

The judgment appealed from will be affirmed, unless the

respondent elects that it shall be modified in conformity with the suggestions that we have made.

Judgment accordingly.