## DORRANCE v. BONESTEEL.

(Supreme Court, Appellate Division, Third Department.  May 2, 1900.)

LANDLORD AND TENANT—SURRENDER.

Where a tenant, who had rented a flat for a year, returned the keys to the landlord before the expiration of the term, who accepted them, but stated that he did so as the tenant's agent, for the purpose of securing a renter for the unfinished term, and he afterwards attempted to rent the flat, but failed, the tenant was liable for the rent for the full term, as the landlord did not accept the surrender of the term.

Appeal from Rensselaer county court.

Action for rent by Mary A. Dorrance against Ervin J. Bonesteel. From a judgment in favor of the defendant, plaintiff appeals.  Reversed.

The action was brought to recover the sum of $34 claimed to be due from the defendant for rental for the months of March and April, 1899, of a flat belonging to plaintiff.  The plaintiff alleged that the hiring was from May 1, 1898, to May 1, 1899.  The defendant alleged that the hiring was from month to month.  Upon February 2, 1899, the defendant, having paid the rent for the month of February, delivered the keys to the plaintiff.  Upon undisputed evidence, these keys were accepted by the plaintiff in connection with this conversation:  "Mr. Bonesteel brought the keys, and I [the plaintiff] said I would take the keys and hold them for him, so as to be able to let it for him as his agent.  He said, 'If you make me any trouble, I will sue for the rent of the room your son occupied.'"  It appears that thereafter the plaintiff endeavored to rent the flat, but failed.

Argued before PARKER, P. J., and HERRICK, MERWIN, SMITH, and KELLOGG, JJ.

Frank H. Deal, for appellant.
Charles I. Webster, for respondent.

SMITH, J.  The judgment of the justice's court rendered in behalf of the plaintiff has been reversed upon the ground that the attempted surrender by the tenant upon February 2d was made effectual by the acceptance of the landlord.  This is the sole question raised by this appeal.

In 1 McAdam, Landl. & Ten. (2d. Ed.) p. 433, the rule is stated:

"As it takes two persons to make a valid contract, it takes the same number to unmake or rescind one; hence the consent of the landlord is necessary to a valid surrender of the term demised.  This consent, when properly expressed, is, as applied to the surrender of a term, called an 'acceptance.'"

In Bedford v. Terhune, 30 N. Y. 454, it is said:

"In order to effect a surrender by act or operation of law, there must be a mutual agreement between the lessor and the original lessee that the lease shall terminate."

See, also, Requa v. Publishing Co., 11 Misc. Rep. 322, 32 N. Y. Supp. 125.

In this case the conversation accompanying the handing of the keys by the defendant to the plaintiff would seem unmistakably to negative any intent on the part of the plaintiff to accept the surrender of the term.  She states substantially that she will not accept a surrender of the term, and will only accept the keys for the pur-

pose of renting the premises as the agent of the tenant. It is probably true that the tenant did not assent to this proposition. That fact, however, renders no less emphatic the plaintiff's refusal to accept a surrender. Unless, therefore, the plaintiff has done some act which would indicate her repentance, it is difficult to find a rule of law which would create an acceptance by her of an attempted surrender against her will.

The learned county judge has cited some cases seeming to hold that a reletting of the premises constitutes in law an acceptance of the surrender, and he argues therefrom that an attempt to relet the premises would have equal significance. That such effect must invariably be given to a reletting is seriously questioned by the authorities, and forcible reasons have been presented for holding that such a reletting may be deemed to be as the agent, and in behalf of the tenant, and not to operate as an acceptance of the surrender, unless an actual intent may be found so to do. In Winant v. Hines, 14 Daly, 187, the argument is very clearly presented. This case was followed in Spies v. Voss (Com. Pl.) 9 N. Y. Supp. 532, wherein the case of McKellar v. Sigler, 47 How. Prac. 22, which has been cited to sustain the rule asserted by the county judge, is distinguished. It has been found difficult to find any reason upon which to support the rule that an actual reletting will of necessity operate as an acceptance of a surrender. But, whatever may be the rule in case of an actual reletting, an acceptance of a surrender has never been found as a matter of law from a mere attempt to relet the premises. Whatever effect might be given to the acts of the plaintiff upon the question of fact whether the plaintiff might not have repented of his refusal to accept has been resolved against the defendant by the verdict in the justice's court. The judgment of the county court, then, cannot be sustained, unless an attempt to relet the premises as matter of law constitutes an acceptance of an attempted surrender, irrespective of the actual intent of the landlord.

In Oastler v. Henderson, 2 Q. B. Div. 575, decided by the English court of appeal, the defendant had rented for seven years from Lady Day, 1868. He left during the first year, and the keys were sent to the landlords. The landlords employed a house agent to let the house, and he put up bills in the house, and advertised it to let, but the house was not let until Lady Day, 1872, when a new tenant went in. In 1870, for a short time, some workmen of the plaintiffs' occupied two rooms in the house for the purpose of plaintiffs' saddlery business. The plaintiffs sued for rent from the time the defendant left to Lady Day, 1872. It was held that there had been no possession of the house by the plaintiffs so inconsistent with the continuance of the defendant's term as to estop plaintiffs from alleging the continuance thereof so as to effect a surrender of the term by operation of law. Cockburn, C. J., in his opinion says:

"The plaintiffs then, by letting the premises to a new tenant, put an end to the defendant's term from that date; for they thereby did an act so inconsistent with the continuance of the defendant's term that they were estopped from denying that it was at an end. But up to that date they had not done such an act, for they had not virtually taken possession of the premises; and, in order to estop the lessors so as to constitute a surrender by op-

eration of law, there must be a taking of possession. I do not say a physical taking of possession, but, at all events, something amounting to a virtual taking of possession. The plaintiffs, the landlords, took the keys because they could not help themselves; the defendants being gone, and, for all they knew, not likely to return. Then they tried to let the house; but what else, under the circumstances, were they to do? They must do the best they could. If they had let the house, they would have done so as much for the benefit of the defendant as for themselves. The mere attempting to let does not amount to an estoppel. The landlords did nothing but what they might reasonably be expected to do, under the circumstances, for the benefit of all parties."

Brett, L. J., in the same case, says:

"If the landlord not only attempts to let, but actually does let, then there is a palpable act done with regard to the premises raising an estoppel. It seems to me that there was no act done amounting to an estoppel prior to March, 1872. The plaintiffs' workmen were, it is true, let into two of the rooms for a time, but that was not by way of taking possession."

This authority must be read in the light of the fact that in England the rule is uniformly held that an actual reletting operates as an acceptance of the surrender of a lease.

In Chaplin, Landl. & Ten. p. 497, it is said:

"But when a landlord accepts the keys of the demised premises, and deals with them as his own, the jury might find that he intended to assume possession, and to discharge the tenant from his obligation as lessee. This result has been held to follow, for example, where the landlord not only re-entered and relet the premises, but made alterations and repairs therein, though it would not necessarily follow from these facts."

In Thomas v. Nelson, 69 N. Y. 120, the defendant moved away from the premises, and sent the keys of the building in a letter. These were not returned. It was held that the retention of the keys was not an acceptance of the surrender of the premises; that plaintiff was not bound to tender a return.

In Long v. Stafford, 103 N. Y. 283, 8 N. E. 525, Judge Earl, writing for the court in case of an attempted surrender, says:

"There is not proof that Mrs. Long ever agreed to accept the surrender of the store, and thus to terminate the lease, prior to May 1, 1872. On the contrary, she refused to accept the key when tendered to her. The fact that she took it from the place where the lessees left it, against her will, and entered the store, is not significant."

In Schieffelin v. Carpenter, 15 Wend. 400, it was held that, in order that a second lease may operate as a surrender and acceptance, it must be a valid lease.

The conclusion reached, therefore, is that the receipt of the keys, with the expressed intention of taking them as the agent of the tenant, together with a subsequent attempt to relet the premises, does not constitute, as matter of law, an acceptance of defendant's attempted surrender. We therefore cannot agree with the county court in its reversal of the judgment in justice's court.

Judgment of county court reversed, and judgment of justice affirmed, with costs of this appeal and in county court. All concur.