SCHULTE REAL ESTATE Co., INC., Plaintiff, *v.* JACK FRANKFORT, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, January 27, 1933.

*Arthur M. Loeb* [*Charles Singer* of counsel], for the plaintiff.

*David L. Weissman*, for the defendant.

LEWIS, DAVID C., J. The plaintiff, as lessor, through its treasurer, and the defendant, as lessee, in person, executed a written lease (under seal) of real property located in the city of New York for a term commencing on July 1, 1930, and ending February 28, 1934.

Thereafter the defendant entered and continued in occupancy under the lease until about July, 1931.

The defendant claims that during July, 1931, after a final order in the landlord's favor had been granted by default, he entered into an oral agreement with an employee (not an officer) of the plaintiff to surrender the unexpired term of said lease; and that thereupon, pursuant to said oral understanding, the defendant left the demised premises, turning back the key.

Must the defendant establish the *express* authority of the plaintiff's employee to make the agreement of surrender?

Does the transaction come within the condemnation of section 242 of the Real Property Law?

" When written conveyance necessary. An estate or interest in real property, other than a lease for a term not exceeding one year, or any trust or power, over or concerning real property, or in any manner relating thereto, can not be created, granted, assigned, *surrendered* or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, *surrendering* or declaring the same, or by his lawful agent, thereunto *authorized by writing*." (Italics mine.) (Real Prop. Law, § 242.)

Under section 242 of the Real Property Law, written authority of any agent to make a lease for more than a year is demanded.

But does the law exact written authority of an agent to accept a surrender of an unexpired term in excess of one year?

The Real Property Law aimed to control the creation and surrender of leases of real property where the terms conveyed or surrendered exceeded one year.

The plain purpose of the statute, with its positive phraseology, invites security. The field or extent of its control is not so surely and simply stated.

And the cases have exempted the so-called " executed surrender " from compliance with the statutory written requirements, classing it as a surrender by operation of law.

The principle of executed surrender is of very old origin. By a train of decisions it has been carried through the course of the law of the land, and various pronouncements testify to its continued existence.

" Where there is an agreement to surrender a particular estate, and the possession is changed accordingly, it is more probable that the Legislature intended to give effect to an agreement so proved, as a surrender by operation of law, than to allow either party to defeat the agreement by alleging the absence of written evidence."

" If an act, which anciently really was in contemplation of law,

and always continued to be, an act of ' notoriety, not less formal and solemn than the execution of a deed, such livery, entry, acceptance of an estate and the like,' (a) be required as requisite for a surrender by operation of law, and if the acts of the three parties are regarded together, this requisite is here found."

" Indeed, in 1809, it seems probable that a restoration of the possession to the landlord and a discharge of the tenant by him was considered a surrender by operation of law." (*Nickells* v. *Atherstone*, 59 E. C. L. 943, at p. 950.) (See, also, *Thomas* v. *Cook*, 2 B. & Ald. 119 [1813]); *Kelly* v. *Noxon*, 64 Hun, 281; *Zipser* v. *Dunst*, 153 N. Y. Supp. 394; *Baldwin* v. *Cohen*, 132 App. Div. 87; *Sixty Wall St.* v. *Clevenger*, 164 id. 191.)

The defendant's claim of an executed surrender borrows support from the legal significance found in handing over the key by the tenant, and its acceptance and retention by the landlord.

It seems the law still attributes to the simple, inconspicuous act of handing over a key something of the ceremony of " livery." And this in a day when one key may mean no more than one of the " Seven Keys to Baldpate."

It strikes one as strange and anomalous that there should be the present-time recognition of a past and abolished feudalistic symbolism. But the court is still the serf of precedent. And such is the law.

And so it appears that since an early day the courts have held that in this way the spoken word, plus the performed act, was free of the sovereignty and rule of this statute.

But a landlord's re-entry upon his property on the tenant's abandonment or removal, with nothing more, does not necessarily spell an implied acceptance of an alleged surrender. (*Dorrance* v. *Bonesteel*, 51 App. Div. 129; *Underhill* v. *Collins*, 132 N. Y. 269; *Thomas* v. *Nelson*, 69 id. 120; *Long* v. *Stafford*, 103 id. 283.)

Did the acts of the plaintiff, as the landlord, and the defendant, as the tenant, in themselves suggest a surrender and acceptance?

The landlord had demanded his rent, and upon its non-payment sought possession by summary proceedings. The tenant conceded his inability to pay, and allowed a final order by default. And after this the tenant vacated the premises.

And this was not the first time the landlord had brought summary proceedings against the tenant. But apparently it was the only time the proceedings were not adjusted before they reached a final order.

Unless we allow the oral exchanges between the defendant and the landlord's employees to put a different complexion on these acts, they do not require the assumption of a surrender and acceptance.

It is the tenant's story that, after the final order, he told the two employees of the landlord of his inability to carry on, and thereupon, after one referred him to the other, he arranged with the latter to surrender and leave the key at a neighboring store. And this is what he did.

The jury evidently subscribed to this testimony.

With due deference for the authorities, I would hesitate to construct a surrender and acceptance of the unexpired term of a sealed lease out of such testimonial timber and on such a factual foundation.

Withal, one does not easily disabuse his mind of the impression that the theory of incompatibility between the acts of the landlord and the continued existence of the original lease is the underlying thought of the courts in the cases of executed surrender. (*Lawrence* v. *Brown*, 5 N. Y. 394.)

And in such cases the law, if necessary, embraces the fiction of a surrender of the old, so that it may countenance the new.

But where the landlord's re-entry and the other facts do not necessarily demand the assumption of an executed surrender, should the law dictate it?

Equity travels along the same lines of reasoning in its recognition and enforcement of oral land agreements. But equity cannot be moved by equivocal acts or conduct. Its power will not be exercised "*unless the policy of the law is saved.*" (Italics mine.) (*Burns* v. *McCormick*, 233 N. Y. 230, 235; *McKinley* v. *Hessen*, 202 id. 24.)

I would prefer that the law take its cue from equity. And what equity would not sustain the law would not support. But the absence of any authority explicitly and conclusively proclaiming such a ruling restrains the court from any unalterable insistence on it.

In passing, one cannot overlook the inconsistency between the two holdings: (a) That an oral lease for a term of years, followed merely by delivery of the key to and the entry into possession by the tenant, cannot be sustained; and (b) that the return of the key to and occupancy by the landlord pursuant to an oral agreement to surrender may be sustained.

One hunts for the logical distinction between an original conveyance and a subsequent surrender. In each instance there is a conveyance or a transfer of an estate from one to the other.

We are assured that section 242 of the Real Property Law had its origin in the hope of preventing perjury by prohibiting any word of mouth or conduct from taking the place of documentary proof.

One finds it difficult to concede that the temptation for perjury

is greater in the creation of the estate than in the case of its surrender.

This is hardly so when real property has lost most of its old-time stability, and when we find the situation, in many instances, just the reverse.

I am mindful of the fact that the prevailing law indulges the claims of the tenant in both the matter of the apparent authority of the agent and the adoption or ratification of his acts relating to an executed surrender. (See *Sixty Wall Street* v. *Clevenger, supra; Warrin* v. *Haverty,* 159 App. Div. 840; *Ireland* v. *Hyde,* 34 Misc. 546.)

The jury resolved the questions of fact in the tenant's favor.

The law is not so clearly expressed and so conclusively established, one way or the other, to give the absolute right to the court of disturbing the jury's verdict. Upon review, I am not so positive of the propriety or equity of doing so, and I have, therefore, upon reflection, decided to permit the jury's findings to stand.

Motion to reargue granted. Verdict reinstated.