S. Samuel Di Falco, S.
The sole issue raised by the objections to the account of the executrix arises from the rejection by the executrix of a claim by 0. Roy Chalk-77th St., Inc., for rent under a lease made by the decedent. The claim is for rent for the months of January to April inclusive, together with the expenses of the claimant in reletting the property. The apartment had been rented for a period of three years and two months, beginning August 1, 1959. The decedent was able to enter into occupancy in the latter part of August, and he continued to live there with his wife until his death on January 5, 1960. His widow, who is the executrix, vacated the apartment on January 21, 1960. The landlord relet the property in May, 1960 at the same rental. The claim is in the total sum of $1,946.40, representing four mouths rent at $370 a month, $266.40 as commission to the broker for reletting the apartment, and expenses of decoration in the sum of $200.
The executrix contends that the landlord is not entitled to recover any sum at all from the estate because (1) there was a surrender and acceptance of the lease in fact; (2) there was a surrender and acceptance of the lease by operation of law; (3) there was a constructive eviction in January, 1960. While conceding that rent for the month of January was due in every event, the executrix states that the sum of $370 had been deposited with the landlord as security for the lease and that when this sum is applied to the rent, there is nothing owed by the estate.
A surrender in fact is made by express words clearly manifesting the intention of the lessee to yield his interest and the intention of the lessor to accept the surrender. (2 McAdam, Landlord and Tenant [5th ed.j, pp. 1350, 1359; Dorrance v. Bonesteel, 51 App. Div. 129, 130.) u Generally, as a contract can be made only by the consent of all the contracting parties, it can be rescinded only by the consent of all. Hence, a valid sur *835 render of a term by the lessee requires an acceptance thereof by the lessor to establish the mutuality essential to a contract.” (Mc.Ada.rn, supra, p. 1359.) Of course, the intention on the part of the lessee to surrender and on the part of the lessor to accept, may sometimes be implied from their acts and conduct, but the facts and circumstances must be such as to justify such an implication of intent.
The evidence respecting the agreed surrender is very meager. The widow vacated the premises, and the record does not indicate any facts, circumstances or conversations which accompanied that act. On January 21, 1960, the attorneys for the widow wrote the landlord a very brief note which reads as follows: “ We represent Mrs. Barnes. We turned the key over to the superintendent on January 21st, 1960.” There is no proof that the superintendent had any authority to accept a surrender of the premises. Indeed, the lease provides: “ No employee of Landlord or of Landlord’s agents shall have any power to accept the keys of said premises prior to the termination of the lease. The delivery of keys to any employee of Landlord or of Landlord’s agents shall not operate as a termination of the lease or a surrender of the premises. ’ ’
The executrix argues that the landlord assumed control of the premises immediately upon receipt of the letter, that it turned over the apartment to its own renting agent for reletting by and for the landlord, and that the failure of the landlord to respond to the letter of January 21 justifies the inference that it had accepted the surrender of the premises. The lease contained a provision that the landlord might relet the premises and hold the tenant liable for the difference between the rent he had agreed to pay and any lesser sum received under the new lease. The only evidence in the record with respect to the landlord’s acts was the testimony of an employee of the landlord who testified that the apartment was turned over to the agent, listed with brokers, and rented in May at the same rental. There is no evidence whatever to indicate that the landlord had accepted a surrender of the lease, had released the tenant’s estate and was acting solely for itself. The mere attempt to rent premises is of itself an equivocal act even in cases where there was no agreement for reletting by the landlord, and does not justify an implication of acceptance of surrender of the lease. (Levitt v. Zindler, 136 App. Div. 695; Dorronce v. Bonesteel, 51 App. Div. 129, 132, 133, supra.)
“ To create a contract by implication there must be an unequivocal and unqualified assertion of a right by one of the parties, and such silence by the other as to support the legal inference *836 of his acquiescence.” (Gray v. Kaufman Dairy & Ice Cream Co., 162 N. Y. 388, 397.) There is no basis for implying an acceptance of the surrender from the landlord’s failure to respond to the letter. The letter indicates an abandonment of the premises by the widow of the tenant. It did not call for any response by the landlord. There is “no rule of law which requires a person to enter into a correspondence with another in reference to a matter in dispute between them, or which holds that silence should be regarded as an admission against the party to whom the letter is addressed.” (Gray v. Kaufman Dairy & Ice Cream Co., supra, p. 398.) There would be even less reason for drawing an inference from the failure to respond to the letter in this case because that letter did not even assert a surrender of the lease or make any other positive assertion of right.
Neither singly nor in their cumulative effect do the facts relied upon by the executrix justify an implication that the landlord accepted in fact a surrender of the lease. Nor do the facts justify a finding that there has been a surrender and acceptance by operation of law. ‘ ‘ A surrender of leased premises is created by operation of law when the parties to the lease do some act so inconsistent with the relation of landlord and tenant as to indicate that both have agreed to consider the surrender as made. * * * Or, as the Supreme Court of the United States says in Beall v. White (94 U. S. 389), speaking of a surrender by operation of law: ‘ Such a conclusion may, in certain cases, arise by operation of law, as where the owner of a particular estate has been a party to some act, the validity of which he is by law after-wards estopped from disputing, and which would not be valid if his particular estate continued to exist. ’ ” (Levitt v. Zindler, 136 App. Div. 695, 696.) The mere sending of the keys to the landlord does not amount to a surrender and acceptance. (Dagett v. Champney, 122 App. Div. 254, 256; Thomas v. Nelson, 69 N. Y. 118.) “ To show a surrender, the tenant must show that the delivery of the keys was made under circumstances justifying the inference that the parties thereby intended to terminate the outstanding term, and was made to a person with authority to terminate a valid lease.” (Lehman, J. in Herb v. Day, 139 N. Y. S. 931, 933.)
The mere offering of the premises for rent does not constitute the acceptance of a surrender by operation of law. (Levitt v. Zindler, supra, p. 697 and cases cited.) The burden of establishing a surrender and acceptance rests upon the tenant (Schwartz v. Brucato, 57 App. Div. 202; Levitt v. Zindler, supra, p. 696) and the estate has failed to sustain that burden.
*837 The executrix also claims a constructive eviction from the apartment. ‘A constructive eviction occurs only where, through the landlord’s acts, the tenant has been substantially deprived of the beneficial enjoyment of the demised premises ” (2 McAdam, Landlord and Tenant [5th ed.], p. 1392) or where “ there has been an obstruction to the beneficial enjoyment of the premises and a diminution of the consideration of the contract by the act of the landlord ” (Tollman v. Murphy, 120 N. Y. 345, 351). The executrix testified to a number of omissions by the landlord which she claims had the cumulative effect of depriving her husband and her of the beneficial enjoyment of the premises and thus evicting her. Most of the matters are of minor importance. The painting and decorating of the apartment and finishing the floors were not completed until more than six weeks after they moved into the apartment. She complained of a failure to finish the closet floors, but there is no basis for finding that the landlord ever agreed to provide wood flooring in the closets. There were leaks in plumbing, temporary failure of an air conditioner, excessive moisture from an air conditioner and difficulties in ventilation of the kitchen, but it would appear that these minor matters were adjusted to the extent that the landlord was obliged to do so. There is no evidence that these conditions persisted up to the time of the abandonment of the premises.
The only subject of complaint that requires serious consideration is the large water tower and fan that was erected on the roof of a building which the apartment of the decedent faced. The executrix and her witnesses described it as a large air conditioner. It was more accurately described by one of the officers of the landlord corporation as “ a water tower. Its primary purpose is to cool the water which cools the compressors which chill the refrigeration equipment ” in the market which occupied the ground floor of the adjoining building. The compressors are in the basement of the market building. This building was owned by the claimant landlord, and it is conceded that the permission to erect this tower was given to the proprietor of the market by the claimant herein. It was installed sometime during the month of October, 1959, after the decedent had begun occupancy of the apartment. The parties are agreed that it was situated about 20 feet from the window of the decedent’s apartment, and that it was approximately seven and one-half feet in height, with a pedestal of a foot and a half. The claimant’s witness testified that the roof was one story below that of the decedent. The structure has a fan. The claimant’s witness testified that “ the blade measuring from tip to tip was four *838 feet. ” It is not clear whether he intended to describe the entire diameter of the fan as four feet from one tip to the other, or whether he meant to measure a single blade as being four feet in length. Counsel are not in agreement in the interpretation of his testimony.
The executrix testified that the structure ‘ ‘ was very, very noisy and there was á vibration from it. It was so great, I couldn’t use the bedroom. * * * One bedroom couldn’t be used at all because of the air conditioning unit.” On the other hand, the officer of the landlord corporation testified that there was absolutely no loud noise or vibration emanating from the tower. He said there were no vibrations at all in the vicinity of the Barnes apartment, and although he listened intently, he could hear no noise. He stated that when one was close to the tower, he “ could hear a small amount of noise of air moving through the blade.”
The witnesses called by the estate do not support the contention of the executrix that there was great vibration in the apartment resulting from the operation of the tower. One neighbor testified that she could see the tower from her window, but that she could not hear it. She said that her apartment was “ much higher in the building ’ ’. The husband of that witness testified to conversations with the decedent in the vicinity of the apartment (although apparently not in the apartment), and that he could hear “ a loud noisy throb ”, but did not feel any vibration. Another witness was a business associate of the decedent, who visited him in October. He heard a noise which he described “as a roar ”, which, he said, lasted while he was in the apartment with the decedent. He gave no testimony of any vibration as a result of the operation of the tower.
The burden of proving a constructive eviction rests upon the tenant. (Weinstein v. Davis, 126 N. Y. S. 613; Katz v. Alvord, 137 N. Y. S. 870; Len Operating Co. v. Ebel, 26 Misc 2d 464, 465; Kanner & Sons v. Abramowitz, 17 Misc 2d 229, 230.) One might well imagine that a large fan in close vicinity to one’s sleeping quarters might create such a nuisance as to result in a constructive eviction of the tenant. (See New York State Investing Co. v. Wolf, 84 Misc. 66 [Lehman, J.]; 55th St. Realty Corp. v. Socolow, 36 N. Y. S. 2d 12; Donovan v. Koehler, 119 App. Div. 51.) Here, however, the personal representative of the deceased tenant has failed to establish that the structure was such or that the noise was of such a character as to substantially deprive the estate of the beneficial enjoyment of the premises. The executrix testified that she spoke repeatedly to the officer who was called as a witness for the claimant, begging him to do some *839 thing about the noise and the structure. She suggested that the landlord “ either move it or put a wall between us ” and, according to her testimony, he said that they were working on it and would do something about it. The executrix left the premises without, insofar as this record shows, any discussion with the landlord as to the reason for her leaving the apartment. The letter written by her attorneys offers no explanation for her leaving, and made no claim of a constructive eviction. The abandonment of the apartment occurred soon after the death of the decedent. The defense of a constructive eviction appears to have been an afterthought, and is only one of the defenses urged by her. Taking into account all of the testimony, it seems to the court that while there may have been some noise from the tower, the estate has exaggerated the disturbance. The court is inclined to credit the testimony of the witness for the claimant that the noise was not loud and was not heard at a distance from the tower. This is confirmed by the testimony of the witness for the estate that in a higher apartment in the building facing the same direction, one could hear no noise at all. There was no vibration in the apartment caused by the fan. The court, therefore, holds that the estate has failed to prove a constructive eviction. The claimant is entitled to recover the rent for the four months, January through April, 1960, against which there is to be credited the deposit.
Under the terms of the lease the claimant is entitled to recover the necessary expense incurred in renting it, namely, the commission of the broker. However, the amount claimed appears to be excessive because it represents a fee for a period of time beyond the termination of the lease of the decedent. The commission should be chargeable to the estate only to the extent that it represents the leasing for the balance of the term of the decedent’s lease. The court holds that the claimant has failed to establish that it was necessary to redecorate the entire apartment. In view of the fact that the decedent had occupied it only for a short time and that the painting had not been completed until he had occupied the apartment for a time, it would not appear necessary to redecorate the entire apartment. The testimony indicates a payment by the landlord to decorators, but there is no basis for finding that such an expenditure was reasonably necessary in order to effect the rental for the balance of the term of the lease.
The objections are sustained to the extent stated above. Submit decree on notice settling the account accordingly.