### In the Matter of ALLBRAND APPLIANCE & TELEVISION CO., INC., Debtors.

### Bankruptcy No. 80 B 11736.

United States Bankruptcy Court,
S.D. New York.

Oct. 26, 1982.

Levin & Weintraub, New York City, for debtor; Joel Holstein, New York City, of counsel.

Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for Creditors Committee; Richard J. Rubin, New York City, of counsel.

Solomon Cohen, Brooklyn, N.Y., for landlord.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOEL LEWITTES, Bankruptcy Judge.

This purported contested matter, commenced by the Chapter 11 Debtors' creditors' committee, seeks *inter alia,* a declaration that the Agreement of Lease dated March 3, 1982 between F & A Land Corp. ("Landlord") and Shawmut Holding Corp. ("Shawmut"), allegedly a related corporation of the Debtors, be deemed a lease of the Debtors.[1] If the Court, would deem the aforesaid lease as the Debtors', the creditors' committee seeks, as well, to sell, assign and transfer such lease to Newmark & Lewis or its designee or assignee for the sum of $25,000.

No *formal* objection by the Landlord was interposed to the standing of the creditors' committee to seek the relief here and accordingly an evidentiary hearing was held.[2]

### A

#### Standing

■ Although the standing of the creditors' committee to commence this proceeding was neither argued nor briefed, we discern no impediment in questioning, *sua sponte,* such standing.

Case law reveals an implied authority for a creditors' committee to sue where a Debtor unjustifiably fails to resort to its statutory arsenal of avoiding powers.[3] Such implied authority is no less applicable here, where creditor protection is sought to preserve an "asset" of the estate for the benefit of the estate and its creditors. Accordingly, we hold that the statutory creditors' committee has standing to maintain this proceeding.

### B

#### *Is The Lease Property Of The Estate?*

#### (1)

#### *Was There A Lease Between Debtors And The Landlord?*

■ The evidence at the hearing on the cause before me reveals that sometime during the latter part of 1981 one of the Debtor corporations occupied a space in the Landlord's premises located at 103–54 94th Street, Ozone Park, Queens, New York. The Debtor corporation at that time had no lease with the Landlord but it paid rent on a month-to-month basis.

Early in January 1982 Landlord's principal, Mr. Frank Leone, commenced conversations with the Debtor's employee, one Bernard Arzt, concerning the drawing up of a lease. During the course of negotiations, Landlord's principal indicated that he did not want the name of a "bankrupt" on the lease as lessee because it would adversely affect the landlord's mortgage. Accordingly, a corporation by the name of "Shawmut Holding Corporation" was formed, at the request of Debtor's principal, in order to assuage the Landlord. The evidence is clear that negotiations, with respect to the

---

1. Although it is clear that before "a bankruptcy judge may declare a party's rights in property, a complaint must be filed . . . ." (*In re Maidman,* 466 F.Supp. 278, 281 (S.D.N.Y.1979), since the instant matter came before this Court for speedy resolution and no party objected to the procedure herein, this Court deems the creditors' committee's order to show cause a complaint, and the Landlord's affidavit in opposition thereto, an answer.

2. No order of the Court was sought by the creditors' committee to prosecute the instant

matter. The Debtors took no position with respect to the merits of the creditors' committee present application.

3. *Matter of Monsour Medical Center,* 5 B.R. 715, 717–718 (Bkrtcy.W.D.Pa.1980) (cases cited). We say "unjustifiably" insofar as it appears so to creditors; the debtor often feels it is justified from refraining to commence such actions in order not to disturb its stream of commerce with its trade vendors, suppliers, or financial lenders.

lease were conducted for the Debtor by Mr. Arzt together with counsel, Louis Levine; Mr. Leone was assisted by counsel, Charles Cipolla on behalf of the Landlord. The lease, in its final form was prepared by Mr. Levine. It appears that on or about March 3, 1982, Mr. Leone signed the final version of the lease on behalf of the landlord and a space was provided therein for signature of a principal of "Shawmut Holding Corp.", as lessee. The signed lease was sent to Debtor's employee Arzt but to date has not been returned with the proposed lessee's signature. Mr. Leone on several occasions during the months of April and May asked for return of a signed lease to no avail. The record of the hearing indicates, without dispute, that the security deposit of $2,500, called for on the lease was deposited by the Debtor with the landlord and monthly rental payments, on the checks of the Debtor were timely sent to the landlord through the month of July 1982.

Pursuant to an order of the Court, the Debtor's assets located in the subject premises were sold, in a liquidation sale, by Advanced Auction Appraisers in August 1982. It appears that the August monthly rent in the amount stipulated in the "lease" was paid by the auctioneer to the Landlord and the keys of the premises occupied by the Debtor were returned to the Landlord by the Auctioneer. The return of the keys, it develops, was not done pursuant to any instructions of the Debtor. The evidence reveals that the Landlord knew that payments of rent through July 1982, as well as the security deposit, were made by the Debtor and not "Shawmut Holding Corporation."

On the basis of the testimony adduced it is clear that the Landlord knew that "Shawmut Holding Corporation" was mere-ly a dummy corporation of the Debtor and that it was the Landlord, out of fear of having a Chapter 11 debtor named on the lease, which encouraged the use of a name other than the Debtor. Clearly, the Landlord knew it was, at all times, dealing with the Debtor, as lessee. Moreover, we find that a valid lease existed between the Landlord and the Debtor despite the undisputed fact that the lessee never signed the lease.

■ The New York Statute of Frauds, applicable here, provides that a lease for a period longer than one year[4] must be in writing and subscribed by the party to be charged[5]—"which is held to mean the person against whom enforcement is sought" [here, the Landlord].[6] Accordingly, the lease is a contract within the Statute of Frauds and that statute is satisfied. Even if this were not so, New York law[7] sanctions the application of equitable principles to direct specific performance of unsigned leases "where there has been part performance and ratification by the party to be charged ...."[8] Although the mere payment of rent, which could indicate no more than a month-to-month tenancy would not implicate the equitable grant of power under the Statute of Frauds, the substantial performance of the parties of the "lease" provisions, including the payment by the Debtor of security in the amount set forth in the lease not signed by the Debtor suffices, in my view, to take it out of the Statute of Frauds.[8a] Accordingly, we find that there was a valid lease between the Landlord and the Debtor.

### (2)
#### Did The Debtor Surrender Its Lease?

We noted earlier, that the Debtor last paid the monthly rent due by it to the

---

4. The term of the subject lease is for a period of five (5) years.

5. N.Y. General Obligations Law § 5–703 (McKinney).

6. *Geraci v. Jenrette,* 41 N.Y.2d 660, 666, 394 N.Y.S.2d 853, 363 N.E.2d 559 (1977).

7. N.Y. General Obligations Law § 5–703(4) (McKinney).

8. *Record Warehouses v. Scherlo,* 94 Misc.2d 226, 228, 404 N.Y.S.2d 530 (Civ.Ct.N.Y.Co. 1978).

8a. *Curcio v. Lounsbury,* 64 N.Y.S.2d 128, 129–30 (Sup.Ct.West Co.1946) (not officially reported). *Compare Means v. Dierks,* 180 F.2d 306, 309 (10th Cir.1950).

Landlord in July 1982. This final payment was coincidental with the court-authorized August 1982 liquidation sale of the Debtor's assets located at the subject premises. That auction lasted from August 1, 1982 until approximately August 20, 1982. The Debtor's security alarms, the protective gates and the keys were returned to the Landlord by the auctioneer. The Landlord, which maintained a furniture store and shared the premises with the Debtor, cleaned up the store left vacant by the Debtor. The Landlord then moved some of its furniture, into the vacated premises, for sale. Thereafter the Landlord listed the premises to real estate brokers in the area in order to rent the vacated area.

It is well-established that "[a] surrender in fact is made by the express words clearly manifesting the intention of the lessee to yield his interest and the intention of the lessor to accept the surrender ...."[9] Such intention, of course, must be made evident by the "facts and circumstances ... to justify such an implication of intent."[10]

The liquidation sale of the Debtor's assets, at the subject premises, covering a period of more than two weeks, was conducted under the very eyes of the Landlord which shared the adjoining space occupied by the Debtor. Moreover, the lessor, subsequent to the sale, re-entered the leased premises.[11]

Abandonment of the premises by the debtor,[12] the overt liquidating sale of Debtor's assets on the leased premises, surrender of the keys,[13] re-entry by the landlord, and cessation of rental payments by the Debtor do not singly evidence surrender; the cumulative effect does, however. Additionally, the Debtor has not seen fit here to maintain that a landlord-tenant relationship existed beyond July 1982. No witnesses were proferred by the creditors' committee, to the contrary, in that regard.

We hold, accordingly that the lease between the Landlord and the Debtor has been surrendered, by operation of law and that since July 1982, the lease was no longer property of the estate.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

Settle order on notice.

---

**9.** *Matter of Barnes,* 37 Misc.2d 833, 834, 237 N.Y.S.2d 183 (Surr.Ct.N.Y.C.1962) (citations omitted). *See also* 34 N.Y.Juris. Landlord and Tenant § 392 at 236 (1964).

**10.** *Id.* at 835, 237 N.Y.S.2d 183.

**11.** *Mt. Read Terminals, Inc. v. Crest Lakes Express Company, Inc.,* 92 Misc.2d 578, 581, 400 N.Y.S.2d 699 (Sup.Ct.Monroe Co.1977).

**12.** *59 Madison Ave. Corp. v. Bauer,* 15 Misc.2d 780, 782, 180 N.Y.S.2d 1013 (Mun.Ct.Bronx Co. 1958).

**13.** *Matter of Barnes, supra* 37 Misc.2d at 836, 237 N.Y.S.2d 183. *See also Schnee v. Jones Equties, Inc.,* 426 N.Y.S.2d 431, 432, 426 N.Y. S.2d 431 (Civ.Ct.Kings Co.1980); *Pennington v. Colonial Pipe Co.,* 260 F.Supp. 643, 648 (E.D. La.1966).